313 So.2d 179

John W. RAINEY

v.

**FORD MOTOR CREDIT COMPANY,**
a corporation.

SC 893.

Supreme Court of Alabama.

April 24, 1975.

Rehearing Denied June 5, 1975.

Charles Cleveland and Harvey L. Wachsman, Birmingham, for appellee.

J. Wm. Thomason, Bessemer, for appellant.

MERRILL, Justice.

Plaintiff, John W. Rainey, filed an action claiming damages for the alleged conversion of a 1972 Ford pick-up truck. The trial court entered a summary judgment in favor of the defendant, Ford Motor Credit Company, and plaintiff appealed.

ARCP 56 permits a defending party to move for a summary judgment at any time. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law, the summary judgment will be granted. State ex rel. Baxley v. Givhan, 292 Ala. 533, 297 So.2d 357.

■ When the factual allegations in the pleadings of the party opposing summary judgment are supported by affidavits or other evidentiary material, they must be taken as true in ruling on the motion. First National Bank of Cincinnati v. Pepper, 2 Cir., 454 F.2d 626; Day v. United Automobile, Aerospace and Agricultural Implement Workers of America, Local 36 of UAW, 6 Cir., 466 F.2d 83.

Applying this standard, the facts as we must assume them for the purpose of this appeal appear to be as follows.

On March 2, 1972, Rainey purchased a new 1972 Explorer Custom pick-up truck from Jim Skinner Ford, Inc., in Birmingham, Alabama. He signed a conditional sales contract in which he agreed to pay the unpaid balance due for the purchase of the pick-up truck in 36 monthly installments of $110.08 each, beginning April 16, 1972. The contract provided that in the event of default in the payments by the buyer "Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale."

Thereafter, Jim Skinner Ford, Inc., assigned the conditional sales contract to Ford Motor Credit Company. Rainey made the payments until August, 1972.

On August 20, 1972, he called Ford Motor Credit and spoke to Wayne Johnson. Rainey requested a computation of the amount to pay off the balance due on the pick-up truck. Johnson replied that he would figure the pay-off balance and call back the next day. Johnson did not call back. Later, Rainey made a similar call with the same result.

Sometime thereafter, Rainey received a letter from Ford Motor Credit requesting payment. His wife also received one or two telephone calls from someone at Ford Motor Credit concerning payment.

Early in October of 1972, two employees of Ford Motor Credit came to Rainey's house. They stated that they either wanted a payment or the truck. Rainey then called Wayne Johnson and asked him about the previous request for a pay-off balance. Johnson did not remember the request. Rainey again asked Johnson to figure the balance due. Rainey told Johnson that he would get the money the next day. After

Rainey's conversation with Johnson, Rainey gave the two employees the keys and they took the truck. There was no altercation. Rainey did not hear from Ford Motor Credit the next day, and he did not contact them.

After the truck was repossessed, Rainey received a notice, dated October 10, 1972, advising him that the truck would be sold after ten days unless redeemed. Defendant did not tell plaintiff the exact time or place that the truck would be sold.

Within the ten-day period provided for redemption, Rainey saw his truck parked in the parking lot at a local department store. He testified that he examined the truck and that it had a "little dent" on the left side that was not on the truck at the time it was repossessed.

On that same day, he called Johnson at Ford Motor Credit and again asked for a computation of the balance owed. He testified that Johnson agreed to send it, but never did.

In March, 1973, Rainey received a letter from Ford Motor Credit claiming a deficiency of $345.35. There was no evidence of any further communication between the parties until suit was filed by plaintiff on October 15, 1973. We note that defendant's counterclaim was dismissed on motion of the defendant when the summary judgment was rendered.

Plaintiff contends that Tit. 7A, § 9–504, UCC, violates the due process clause of the Fourteenth Amendment to the Constitution of the United States.

Section 9–504 provides in pertinent part as follows:

"*Secured party's right to dispose of collateral after default; effect of disposition.*—(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation of processing. * * *"

Our determination of the § 9–504 issue necessarily involves Tit. 7A, § 9–503, UCC, which provides for "self-help" repossession. The first two sentences of § 9–503 read:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *"

█ It is well-settled that the Fourteenth Amendment is directed against state action and not private action. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25, reversed 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412, motion denied, 376 U.S. 967, 84 S.Ct. 1130, 12 L.Ed.2d 83. So, in order to find a violation of due process in this case, we must first determine that §§ 9–503, 9–504 involve "state action."

In Baker v. Keeble, 362 F.Supp. 355 (D.C.1973), affirmed 498 F.2d 365, the Federal District Court listed the situations where private conduct has traditionally been deemed "state action":

"As a general rule, action by a non-state official fulfills the requirement of 'state action' in only three circumstances: (1) Where a state official is acting in concert with a private individual; (2) where the state compels such action; and (3) *where the state law creates a power which has no common law or contractual origin.* * * *" (Emphasis Supplied).

█ "At common law no judicial proceeding was necessary to foreclose a mortgage of personal property; but the mortgagee, after a forfeiture, might seize and sell the property in satisfaction of his debt * * *." 11 C. J., Chattel Mortgages, § 486, p. 695; Freeman v. Freeman, 17 N.J. Eq. 44.

■ The right of a creditor to repossess and resell collateral after default, where provided for by contract, was recognized in Alabama long before the adoption of §§ 9–503, 9–504. See Street v. Sinclair, 71 Ala. 110; Burns v. Campbell, 71 Ala. 271; Harmon v. Dothan Nat. Bank, 186 Ala. 360, 64 So. 621; DeMoville v. Merchants & Farmers Bank, 237 Ala. 347, 186 So. 704; Lineville National Bank v. Weaver, 16 Ala.App. 431, 78 So. 461. Thus, we find no state action, and need not reach the constitutional due process issue.

■■ It should be noted, however, that it has been our practice not to decide any constitutional question except with reference to the particular facts to which it is to be applied. In the present case, the agreement provided for repossession and resale of collateral after default. On the other hand, §§ 9–503, 9–504 provide for "self-help" even when the agreement is silent on that point. We express no opinion as to the constitutionality of §§ 9–503, 9–504 as applied to contracts which do not provide for repossession and resale after default.

The next issue raised by plaintiff involves Tit. 7A, § 9–506, UCC. Section 9–506 provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 9–504 or before the obligation has been discharged under section 9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

While there is no provision in § 9–506 requiring the creditor to advise the debtor of the amount necessary to redeem, plaintiff submits that one must necessarily be implied, and that failure of the defendant to furnish a computation of a pay-off balance upon a *telephone request* by the plaintiff excuses tender. We do not agree.

■■ While the creditor may in some cases be required to furnish such information, plaintiff's demand was not sufficient. No *written* request was ever made.

Title 7A, § 9–208, UCC, provides in part as follows:

"*Request for statement of account or list of collateral.*—(1) A debtor may *sign a statement* indicating what he believes to be the aggregate amount of unpaid indebtedness as of a specified date and may send it to the secured party with a request that the statement be approved or corrected and ·returned to the debtor. * * *" (Emphasis Supplied).

Plaintiff cites Tit. 7, § 731. That section is not apt since it applies to redemption of real estate. We note that it also required a "written" demand for a statement of the debt or charges.

Plaintiff also argues that the fact that the truck was seen by him in a parking lot with a dent on it between the time it was repossessed and the time of sale was evidence of a conversion by defendant and thus the trial court erred in granting a summary judgment.

UCC § 9–501, under Default, provides in pertinent part that "A secured party in possession has the rights, remedies and duties provided in section 9–207"; and § 9–207(4) reads in part: "A secured party may use or operate the collateral for the purpose of preserving the collateral or its value * * *."

■ In Rhodes-Carroll Furniture Co. v. Webb, 230 Ala. 251, 160 So. 247 (pre-UCC), this court said as to some counts in trover: "But as defendant had the legal title and the lawful right to the possession,

manifestly there could be no recovery for a conversion, \* \* \* ." This statement is quoted with approval in First National Bank of Butler v. Sturdivant, 288 Ala. 133, 258 So.2d 715 (1972). This is also the theory of the Alabama cases cited supra. It is consistent with these cases that the defendant would have the right to use the truck after default and repossession.

Plaintiff cites in brief § 9–504(3) as authority for this contention. That section contains sale and notification requirements. There is no contention that these requirements were not met.

We do not find that there is a genuine issue as to a material fact upon which relief can be granted; and we conclude that the defendant was entitled to the summary judgment entered by the trial court.

Affirmed.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.