366 So.2d 1097 (1978)
Sam E. RAGLAND et al.
v.
ALABAMA POWER COMPANY, a corporation, et al.
77-59.
Supreme Court of Alabama.
June 16, 1978.
As Corrected On Denial of Rehearing September 22, 1978.
*1098 James B. Kierce, Jr., Stone, Patton & Kierce, Bessemer, for appellants.
Edward S. Allen, Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, for appellees.
PER CURIAM.
This appeal by plaintiffs, Sam E. and Annette J. Ragland, is from summary judgments for defendants Alabama Power Company and Asplundh Tree Expert Company holding that defendants had the right to enter on the lands of the plaintiffs and cut fifteen trees and top three others grounded on the right under an easement to cut "danger trees adjacent thereto where necessary." We consider the grant of summary judgment to have been inappropriate and reverse and remand.
Asplundh Tree Expert Company, under contract with Alabama Power Company, entered on plaintiffs' lands and cut 15 trees and topped three others, which trees were located near an electric transmission line right-of-way easement of the Alabama Power Company. The easement granted, inter alia, "the right to cut and keep clear all trees and undergrowth and other obstruction on the [right-of-way], and danger trees adjacent thereto where necessary."
The issue presented for review is, "Whether the cut and topped trees fell within the easement right to cut `danger trees adjacent thereto where necessary' so that summary judgment was appropriate in this case?" We would answer "no" to this issue.
We do not disagree that the law of the case is enunciated in Collins v. Alabama Power Company, 214 Ala. 643, 108 So. 868 (1926). There, Mr. Justice Sayre, writing for the Court, construed "danger trees" (within the meaning of a clause identical to the one in the case at bar) "to mean trees which, by reason of size or condition, and contiguity to complainant's right of way, involve a concrete threat of injury to complainant's transmission or telephone lines, * * *".
There is at least one question of fact, or mixed question of law and fact, under the Collins definition. "Were these `danger trees'?" That is, "Were they, by reason of their size or condition, and contiguity to the right of way, a concrete threat of injury to the transmission lines?"
It is uncontroverted that the trees cut and topped were healthy, disease free and varied from three to fourteen inches in diameter.
Examining the affidavits filed by Alabama Power Company in support of summary judgment, we find the affidavits showed, "It is most important * * * that all transmission lines be kept free of hazards * * * a major hazard being the location of trees within falling distance * * * on these transmission lines"; it is Alabama Power Company's practice to cut as "danger trees" those which "in falling they would come within five feet of the nearest current carrying wire"; that three electric transmission lines of high voltage *1099 abut the property of the plaintiffs; that "every tree which was cut or trimmed would have actually struck the nearest electric conductor on the transmission line right of way in falling, without regard to the usual five foot clearance * * *."
Examining the counter affidavits filed by plaintiffs, we find the trees were cut "after [defendants were] warned" not to do so; the youngest of the trees was approximately fifteen years old and the oldest no older than thirty years and they "were strong and sturdy, alive and healthy, and free from disease"; that none of the "said trees cut down or topped by defendants involved a concrete threat of injury to the transmission lines"; based upon an examination of the stumps, other trees in the vicinity, "the stacks of the trees that were cut down," photographs, and topography of the land, the trees cut did not "involve a concrete threat of injury to the" transmission lines nor would such trees "have fallen or been blown down except by winds of 80 miles per hour" and even with such "winds of 80 miles per hour * * * there is considerable doubt that the trees that were cut would be blown down in the direction of the conductors because of their location on the downslope of a hill or ridge and because of the fact that the trees which were cut were protected from the West by numerous other healthy trees" and the fact that the "conductors are located to the East of the trees which were cut." (Emphasis added.)
These conflicting statements of the Alabama Power Company's employees and those of the plaintiff and his forester lead us to conclude that summary judgment was inappropriate in this case.
We have said many times that summary judgment should be rendered only if the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56 A.R.C.P.; Folmar v. Montgomery Fair Co., Inc., 293 Ala. 686, 309 So.2d 818 (1975).
The moving party must clearly show that the other party could not recover under any discernible set of circumstances and must show the absence of a genuine issue as to any material fact. Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975).
The factual allegations in pleadings and affidavits of the party opposing the motion for summary judgment (here the plaintiff) must be taken as true in ruling on the motion. Rainey v. Ford Motor Credit Co., 294 Ala. 139, 313 So.2d 179 (1975).
We have no difficulty at all finding that there are genuine issues of fact in this case and summary judgment was therefore inappropriate.
REVERSED AND REMANDED.
BLOODWORTH, MADDOX, FAULKNER, SHORES and BEATTY, JJ., concur.
TORBERT, C. J., and JONES, ALMON and EMBRY, JJ., dissent.
EMBRY, Justice (dissenting):
I respectfully dissent.
What this appeal actually involves is a determination of what, as a matter of law, is a "danger" tree.
The Raglands filed their action for damages against the Power Company and Asplundh complaining of trespass upon their real estate and conversion of trees thereon.
The essential facts, as shown by the pleadings, affidavits, admissions, and exhibits upon which the motions of the Power Company and Asplundh for summary judgments were submitted, disclose that:
Asplundh, under hire by the Power Company, entered on the lands of the plaintiffs and cut 15 trees and topped three others; the trees were located adjacent to an electric transmission line right-of-way easement of the Power Company; the granted easement included "the right to cut and keep clear all trees and undergrowth and other obstruction on the right-of-way and danger trees adjacent thereto where necessary"; the trees cut and topped were healthy, disease free, and varied from three to fourteen inches in diameter; the trees were of such size and so located that, if *1100 they were caused to fall, they would have actually struck the nearest electric conductor wire of the transmission line.
There is no dispute in the facts presented by the affidavits filed in behalf of the parties to this action; only the conclusions drawn by the various affiants. The conclusion drawn by affiants whose affidavits support the position of the Raglands is that the cut and topped trees presented no concrete threat to the power lines because they were not likely to fall or be blown down.

To Illustrate
From the affidavit of the Power Company's Birmingham Division Transmission Line Superintendent:
"* * * It is most important to the maintenance of electric service that all transmission lines be kept free of hazards to service interruptions, a major hazard being the location of trees within falling distance of electric conductors on these transmission lines. In spite of Alabama Power Company's program of periodically reclearing such trees, called `danger trees,' approximately 15% of the permanent line interruptions to Alabama Power Company's transmission system over the past ten years have been due to such trees. By `permanent,' I mean that the lines remained out of service until they could be repaired by a transmission line crew. It is also appropriate to mention that of these outages caused by falling danger trees, 4% were caused by trees which were dead or dying, and 96% were caused by green or live trees.
"Because of these operating experiences, Alabama Power Company must continually reclear danger trees adjacent to transmission lines, * * *"
From the affidavit of the Power Company's Supervisor of Line ClearingLarge:
"* * * On December 19, 1975, Alabama Power Company cut 15 trees and topped two other trees on the Ragland property adjacent to the Alabama Power Company right of way mentioned above. All of the danger tree cutting and trimming which was carried out on this occasion, although carried out by contractors, was done under my direct supervision and direction and in my presence.

"In the instance of cutting the trees on the property of Mr. and Mrs. Ragland, every tree which was cut or trimmed would have actually struck the nearest electric conductor on the transmission line right of way falling, without regard to the usual five foot clearance for future growth and wind action. I personally measured each of the trees cut or trimmed, the distance of each tree from nearest conductor and the conductor height at the location of each tree * *
* * * * * *
"* * * The foregoing is a complete list of the trees cut or topped on the Ragland property on the occasion made the basis of this law suit. I have calculated the angle of fall of each of these trees, and each and every tree cut or topped on this property would have actually struck the nearest electric conductor on the transmission line right of way abutting the Ragland property in falling toward the transmission lines." (emphasis added)
From the affidavit of Mr. Ragland:
"* * * It is my opinion, based upon the size, condition and contiguity of the trees cut down and topped by defendants, and based upon my knowledge of having observed said trees practically every day for seven years under varying weather conditions, that none of the said trees cut down or topped by defendants involved a concrete threat of injury to the transmission lines or conductors of defendant Alabama Power Company." (emphasis added)
From the affidavit of Mr. Ragland's expert forester:
"I visited the Ragland property on October 25, 1976, and examined the stumps of approximately 15 trees which Sam E. Ragland pointed out to me as being the ones cut down by the defendants on December 19, 1975. I also examined approximately *1101 3 other trees from which the tops had been cut. In my judgment, based upon my training and experience as a forester, the youngest of these trees was approximately 15 years and the oldest probably about 30 years. I also examined closely the other trees located in the immediate area of the stumps.
"From examining these stumps, it would be my opinion that the diameter at breast height, i. e., approximately 4¼ feet above the ground, would range between approximately 3 inches and 14 inches.
"I have read the affidavit of Kenneth A. Berry [Power Company's Supervisor of Line ClearingLarge] attached to defendant's motion for summary judgment. Assuming what he said is true at the bottom of page 2 of his affidavit, in which he gives the height of the trees, the distance of the trees from the conductor and the conductor height, and based upon my examination of the stumps, the other trees in the immediate vicinity of the stumps, the stacks of the trees that were cut down which I examined on October 25, 1976, and the photographs numbered 1 through 23 attached to Mr. Ragland's affidavit, which I examined, and based upon the topography of the land from which the trees were cut, I am of the opinion that because of the condition, size, and contiguity of the trees cut and topped by defendants, that the same did not, on December 19, 1975, involve a concrete threat of injury to the conductors. Upon examining the stumps and stacks of trees that were cut, examining the photographs referred to above, and the trees yet standing in the immediate vicinity, and based upon my training and experience as a forester, I am of the opinion that the trees cut were alive and healthy at the time they were cut. In my opinion, based upon my training and experience and knowledge of pine trees of the size, shape and condition that were cut, such trees would not have fallen or been blown down except by winds of 80 miles per hour or more. Even with winds of 80 miles per hour, or more, there is considerable doubt that the trees that were cut would be blown down in the in the direction of the conductors because of their location on the downslope of a hill or ridge and because of the fact that the trees which were cut were protected from the West by numerous other healthy trees. The conductors are located to the East of the trees which were cut." (emphasis added)
The contention of the Raglands is, as stated, that the phrase concrete threat means likely to fall. To agree, defies logic. Were it to have that meaning, there could be no program of periodic cutting and topping to reasonably insure against unwarranted interruption of electrical power service to the consuming public. To hold as does the majority, would require daily examination of each tree adjacent to each right-of-way of the Power Company, throughout the length and breadth of Alabama, in order to determine the health of each of those trees before there would be the right to cut or top them. Neither the statute nor the grant of easement so requires. The opinion of the majority renders the Power Company liable if they cut or top if there be difference of opinion about whether a tree is likely to fall. It also imposes liability should the doubt be resolved favorably to the landowner and a healthy tree encounters an electrical transmission line producing injury. This is an irreconcilable inconsistency: be damned if you do; be damned if you don't.
Were the cut and topped trees, "danger" trees as a matter of law?
The Raglands contend that the trees cut and topped were not in such condition, of such size, or contiguity to Alabama Power's conductors as to pose a concrete threat to the conductors; therefore not danger trees under the facts of the case. The principal authority relied upon to support this proposition is Collins v. Alabama Power Company, 214 Ala. 643, 108 So. 868 (1926).
The Power Company and Asplundh contend that, as a matter of law, danger trees within the meaning of electric transmission line easements include trees of such size *1102 and contiguity to the transmission line right-of-way that, if they fell, they would strike and likely damage or endanger the lines on that right-of-way. They also cite Collins as authority to support this contention.
I am compelled to agree with the contention of the Power Company and Asplundh; and accordingly with the correctness of the trial court's entry of summary judgment in their behalf.
Collins, supra, is not authority for the theory that a danger tree is only one that is likely to fall and injure and damage an electrical transmission line but it is authority for the proposition that a danger tree is one that would likely injure or damage the line if it fell.
The right to cut or top danger trees granted by the instrument conveying the easement in this case is the same right which would be acquired had the easement been the subject of eminent domain proceedings initiated by the Power Company. § 37-4-130, Code 1975. That right must be paid for as it is a servitude upon lands adjacent to the easement and time of payment is upon acquisition of the right-of-way easement. Wiggins v. Alabama Power Co., 214 Ala. 160, 107 So. 85 (1926).
I conclude from an examination of the pertinent authorities that the language in Collins defining the phrase danger trees: " * * * to mean trees which, by reason of size or condition, and contiguity to complainant's right of way, involve a concrete threat of injury to complainant's transmission * * * lines * * *", when read with the language of § 37-4-130: "* * * such timber as may injure or endanger * * *" (emphasis added), that the law is speaking of trees likely to injure or endanger should they fall rather than trees likely to fall.
Common sense compels one other conclusion. It is not contradicted that it is a practice of the Power Company to cut and top on a minimum cycle of four years, and in so doing to cut or top danger trees which, should they fall, would come within five feet of the nearest current carrying wire.
To do otherwise would ignore the obvious: trees grow, healthy trees sway, fall, and are caused to fall, and when falling sometimes fall farther than their height for various reasons, including wind.
The summary judgment in behalf of the Alabama Power Company and Asplundh Tree Expert Company should be affirmed.
TORBERT, C. J., and JONES and ALMON, JJ., concur.

ON REHEARING
OPINION CORRECTED. APPLICATION FOR REHEARING OVERRULED.
BLOODWORTH, MADDOX, FAULKNER, SHORES and BEATTY, JJ., concur.
TORBERT, C. J., and JONES, ALMON and EMBRY, JJ., dissent.