FAULKNER, Justice.
On June 16, 1980, Johnny Wayne Johnson and Charles Osburn, Jr. drowned in the Tombigbee River. The administrators of their estates each filed suit against Warrior & Gulf Navigation Company based on Alabama’s Wrongful Death Statute and the general maritime law. Summary judgments were entered in favor of the defendants in each case. Both plaintiffs appeal and their cases have been consolidated for our consideration. We affirm.
The general issue presented concerns whether the trial court properly entered summary judgment. Summary judgment is proper only where the evidence of record, when viewed in its most favorable light, presents no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. A.R.Civ.P. 56(c); Ragland v. Alabama Power Co., 366 So.2d 1097, 1099 (Ala.1978).
The dispositive facts are as follows: On of June 16, 1980, the Warrior & Gulf Navigation Company tug Seminole was proceeding south on the Tombigbee River, pushing six coal hopper barges, made up two abreast and three deep. At approximately 10:15 A.M., one or two of the *292 barges ran aground on a sandbar. The sandbar is located near what is popularly-known as “Old Lock # 3.”
The tug’s crew began work to free the flotilla. In order to accomplish this, the power of the tug was used to swing the tow from side to side and back and forth until the grounded barge or barges could be freed and backed off the sandbar. One of the decedents, Charles Osburn, Jr., had come to the river that day with his father, his brother, and a friend. The Osburns spent the morning fishing off the bank downstream from the sandbar. Around 11:30 A.M., the Osburns retired to their truck to eat lunch. At that time, the tug and barges were still bottomed on the sandbar.
After lunch, the Osburn boys met their father on the bank of the river and asked permission to go approximately one hundred yards upstream in order to visit some friends, Sherri and Johnny Johnson, who were camping at a site adjacent to the sandbar. By this time, the Seminole and its barges had cleared the sandbar and passed the Osburns, and was proceeding downriver.
Mr. Osburn Sr. gave his permission for the boys to go visit the Johnson camp. Mr. Osburn remained on the bank fishing while the boys proceeded upriver to the area of the sandbar, where they met the Johnsons.
Shortly after arriving at the Johnson camp, Charles Osburn, Jr. and his brother, Jerry, began to wade out on the sandbar. The water surface appeared to be calm and normal. By all accounts, when Charles and Jerry entered the water, the Seminole was rounding a bend in the river some 400 to 500 yards south of the sandbar. Charles went out into the river to a point where the water was over his head and began experiencing difficulty staying afloat. Jerry, who was approximately seven feet behind Charles, testified in deposition that he felt the bottom of the sandbar caving in beneath him, forcing him into deeper water. Jerry was able to get back to shallow water; however, his brother was not so fortunate.
Charles began calling for help. While Jerry was able to grab Charles’s hand momentarily, he was unable to hold onto him. Johnny Wayne'Johnson, seeing Charles in distress, told Jerry to return to the shore. Johnson then attempted to go to Charles’s aid. Moments later, Mrs. Johnson noticed that her husband was also in trouble, when he began panicking and yelling for help.
In an effort to rescue them both, Mrs. Johnson also swam to the scene from the bank of the river. She stated that because the water was “pulling,” it was difficult to swim. Nevertheless, she attempted to grab her husband, but Charles, who was panicking, jumped on her, forcing her under the water. When she resurfaced, both Charles and her husband had disappeared below the surface.
Mrs. Johnson attempted to swim back to shore, but was unable, due to a strong current. Ultimately, she was rescued by another individual with a boat.
The administrators each alleged that Warrior & Gulf negligently operated the Seminole in allowing the vessel to run aground on the sandbar near “Old Lock # 3.” The trial court entered summary judgment in favor of the defendant in each suit.
The appellants argue that the evidence of record indicates that the Seminole and its crew breached a duty owed to swimmers in the area to leave the sandbar in a safe condition, or in the alternative to warn swimmers of a lingering undertow created by the tug. To the contrary, under the circumstances of this case, we find that as a matter of law, the crew of the Seminole breached no duty owed the decedents. Accordingly, the defendants are entitled to a judgment as a matter of law.
The appellants rely heavily upon the ease of Price v. United States, 530 F.Supp. 1010 (S.D.Miss.1981), to support their argument. We find that case distinguishable from the case at bar. In Price, the United States Army Corps of- Engineers contracted to oversee the repair of a seawall adjacent to a public beach. The extensive dredging *293 necessary to complete this work was contemplated by the contract, which required that all “borrow areas” along the coastline be marked with warning signs. The contract further specified the size, spacing, and wording of the warning signs, as well as which direction they would face. The trial court found that the Corps of Engineers had breached its duty to warn swimmers of the dredged areas by posting inadequate notice.
In contrast to Price, the tug owner or operators in the case at bar never assumed the duty to warn all bystanders on the banks of the Tombigbee of possible undercurrents created by the tug. Neither does the law impose such a duty upon the Seminole by statute, regulation, or custom.
This is not to say that a tug operator never has the duty to warn swimmers in the area of dangerous conditions. See, e.g., In the Matter of Consolidation Coal Company, 296 F.Supp. 837 (W.D.Pa.1968). In this case, however, it is undisputed that by the time the Osburn boys entered the water, the Seminole was no longer in the area. In fact, the tug had passed the Os-burn camp before the boys ever asked their father for permission to visit the Johnson camp.
Having found that the crew of the Seminole breached no duty owed the Osburns or the Johnsons, we conclude that no genuine issue of material fact was presented. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.