(10 P.3d 33)

No. 84,164

CHERYL M. EMMONS, *Appellant,* v. LEMASTER, INC., and CHARLES A. LEMASTER, *Appellees.*

—

Opinion filed August 11, 2000.

*Darrell Smith,* of Olathe, for appellant.

*Stephen J. Smith,* of Coombs, Hull & Smith, L.L.C., of Burlington, for appellees.

GREEN, P.J., GERNON, J., and PHILIP C. VIEUX, District Judge, assigned.

Green J.: Cheryl M. Emmons and LeMaster, Inc., through its president, Charles A. LeMaster, entered into a written agreement giving LeMaster an exclusive option to purchase Emmons' airplane if she defaulted on repayment of a loan from LeMaster. The trial court originally found that this transaction was not a secured transaction governed by K.S.A. 84-9-201 *et seq.* The Court of Appeals disagreed, determining that the agreement between the parties was a security agreement and satisfied the requirement of

a writing. The Court of Appeals remanded for a new trial on the issue of whether the parties intended to create a security interest. On remand, the trial court determined that the parties' security agreement contained a security interest to secure repayment of a loan. The trial court also found that Emmons failed to object to LeMaster's purchase proposal within 15 days of receiving notice and, as a result, she waived her right of redemption. We disagree and remand with directions for a determination of Emmons' damages.

Emmons owned a Piper PA 28-140 airplane that she hangered at the Coffey County Airport. She failed to pay the hanger fees, and the airport authority obtained a judgment against her. In order to satisfy that judgment, her airplane was to be sold at a sheriff's sale on March 13, 1995.

LeMaster offered to help Emmons avoid the loss of her airplane by loaning her the money to pay her debt to the airport authority in exchange for an "exclusive option to purchase" the airplane. The agreement was executed on March 13, 1995. LeMaster advanced Emmons $1,294.18 under the agreement. If Emmons paid back the advance in full by June 13, 1995, she was to retain all rights to the airplane. If she did not, LeMaster was to purchase the airplane for $13,000. A signed bill of sale was placed in escrow at Citizen's State Bank in New Strawn, Kansas.

On June 13, 1995, Emmons paid LeMaster $425 in partial repayment. No further payments were made until later. On June 13, 1995, LeMaster exercised its option to purchase the airplane. Lemaster paid $11,705.82 to Citizen's State Bank in exchange for the executed bill of sale. On the same day, Citizen's State Bank mailed $11,705.82 to Emmons to pay for the plane. The cashier's check noted that payment was from Charles LeMaster and LeMaster, Inc. The payment was accompanied with a note written on the Citizen's State Bank letterhead, which simply stated: "Enclosed is payment in full on LeMaster-Emmons escrow for purchase of Piper PA28-140." Emmons refused to accept the payment. On July 5, 1995, Emmons mailed two checks to LeMaster that totaled the amount advanced and paid to the escrow agent by LeMaster. LeMaster did not cash these checks. LeMaster had taken posses-

sion of the airplane on June 13, 1995, registered it with the Federal Aviation Administration, and made repairs on the plane in preparation for resale. On August 4, 1995, LeMaster sold the plane to Ralph and Latricia Mathews for $23,000 plus tax after incurring $5,906 in expenses in preparing the airplane for resale.

*Notice of Strict Foreclosure under K.S.A. 84-9-505(2)*

Emmons appeals from the trial court's decision on remand that she had proper notice of LeMaster's intention to satisfy the debt by retaining the collateral under K.S.A. 84-9-505(2) and that she waived her right to redemption because she did not object within 15 days of receiving notice. It is first necessary to address whether the check and letter sent to Emmons constitutes sufficient notice of LeMaster's intention to satisfy the debt by retaining the airplane. K.S.A. 84-9-505(2) provides in pertinent part:

"[A] secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. . . . If the secured party receives objection in writing from a person entitled to receive notification within fifteen (15) days after the notice was sent, the secured party must dispose of the collateral under section 84-9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."

This section requires notice to the debtor of the creditor's proposal to retain the collateral as full satisfaction of the debt. "The notice must be of strict foreclosure in particular, and not simply of an intent to foreclose." *Fletcher v. Cobuzzi*, 499 F. Supp. 694, 699 (W.D. Penn. 1980) (holding that letters sent by the creditor to the debtor did not constitute notice under Uniform Commercial Code § 9-505[2] because the letters made no reference to the creditor's intention to retain the collateral rather than dispose of it by sale or otherwise); see 10 Anderson on the Uniform Commercial Code § 9-505:84 (3d ed. 1999) ("[I]n the case of nonconsumer collateral, all that the creditor is required to do is to manifest the intent to retain the collateral in satisfaction of the debt. Such declaration gives the creditor the rights to ownership of the collateral.").

Here, the letter sent by Citizen's State Bank to Emmons merely stated LeMaster's intent to exercise the option contract and pur-

chase the airplane. The letter makes no reference of LeMaster's intent to retain the airplane in full satisfaction of the debt. Moreover, LeMaster has produced no other evidence indicating that he gave notice of strict foreclosure to Emmons or that she renounced after default her right to receive notice. Not only was LeMaster required to notify Emmons of his intent to retain the airplane in full satisfaction of the debt, but it would have been good business practice to have also informed her that she had 15 days to object under K.S.A. 84-9-505(2). As a result, LeMaster's alleged strict foreclosure of the collateral was invalid for failure to comply with the notice provisions of K.S.A. 84-9-505(2). See *Fletcher*, 499 F. Supp. at 699; *In re Sports Autos, Inc.*, 6 U.C.C. Rep. Serv. 991, 993-94 (W.D. Pa. 1969).

*Right of Redemption under K.S.A. 84-9-506*

Because LeMaster failed to notify Emmons of his intent to retain the airplane in full satisfaction of the debt, Emmons may have had the right under K.S.A. 84-9-506 to redeem the collateral. The statute provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 84-9-504 or before the obligation has been discharged under section 84-9-505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

Here, Emmons tendered full payment of the loan by mailing three money orders to LeMaster. The first money order in the amount of $425 was sent to LeMaster on June 13, 1995. Emmons enclosed a note with the payment which stated that she would "pay the balance (July 1, 1995) and any other costs incurred." The second and third payments were sent together on July 6, 1995. Along with these payments, Emmons sent a note which read: "Enclosed are two (2) money orders in total amount of $869.18—the balance due of the $1294.18. Let me know the ground insurance and I have (if correct) June and July '95 hangar to pay." Despite Em-

mons' requests for the amount of expenses she owed, there is no evidence in the record that LeMaster provided her with a written payoff balance.

Significantly, Emmons's right to redeem the collateral under K.S.A. 84-9-506 had not lapsed when she tendered the payments. "The right of redemption exists until the secured party has disposed or contracted to dispose of the collateral under 84-9-504 or 84-9-505(2)." K.S.A. 84-9-506, Kansas Comment, 1996. Emmons' right to redeem existed when she tendered the payments because LeMaster could not have contracted to dispose of the collateral under 84-9-504 since he failed to comply with the notice provisions in subsection (3). In addition, the right of redemption had not lapsed because, as previously discussed, LeMaster did not complete the strict foreclosure of the collateral since he failed to notify Emmons of his intent to retain the airplane in full satisfaction of his debt. As a result, the time limitation placed upon Emmons' right to redeem the collateral had not expired when she tendered the payments to LeMaster.

Moreover, we find that LeMaster waived tender of the expenses allowed under K.S.A. 84-9-506 by his failure to notify Emmons as to the amount of these fees. A creditor may waive tender where the creditor takes any position which would render a tender, so long as the position taken by the creditor is maintained, " 'a vain and [idle] ceremony.' " *Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26, 31 (Mo. App. 1976) (quoting *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 303-04 [Mo. 1967]); see 10 Anderson on the Uniform Commercial Code § 9-506:53 ("When a creditor improperly refuses to permit a debtor to redeem collateral . . . the creditor waives the requirement of a tender of the proper amount and is also guilty of a conversion of the collateral.").

In addition, despite Emmons' written request for the amount of insurance and hangar fees she owed LeMaster, he failed to provide her with a payoff balance. K.S.A. 84-9-208(1) provides:

"A debtor may sign a statement indicating what he believes to be the aggregate amount of unpaid indebtedness as of a specified date and may send it to the secured party with a request that the statement be approved or corrected and

returned to the debtor."

This section of the Uniform Commercial Code is "one of the most important, and from the caselaw, one of the most neglected provisions in the UCC." K.S.A. 84-9-208, Kansas Comment, 1996. Not only has the section been neglected in Kansas, but it has seen little application nationwide. In fact, one of the only cases to address section 9-208 of the UCC is *Rainey v. Ford Motor Credit Company*, 294 Ala. 139, 313 So. 2d 179 (1975). *Rainey* held that "[w]hile the creditor may in some cases be required to furnish [the payoff balance], plaintiff's [telephone request] was not sufficient. No *written* request was ever made." 294 Ala. at 143. See Clark, The Law of Secured Transactions under the Uniform Commercial Code ¶ 4.11[4] (rev. ed. 1993) ("Must the secured party furnish the debtor with a payoff balance so that the redemption amount can be accurately determined? This duty seems obvious.").

In the present case, LeMaster's failure to comply with Emmons' written request for a statement of accounting prohibited Emmons from determining the redemption amount. As a result, LeMaster's failure to notify Emmons as to the amount of fees and expenses prohibited Emmons from redeeming her airplane as provided in K.S.A. 84-9-506 and effectively excused or waived any obligation on Emmons' part to tender in the strict legal sense the amount of those fees and expenses. See *Owens*, 544 S.W.2d at 32. Because LeMaster improperly refused to allow Emmons to redeem the collateral, we find that LeMaster waived the requirement of tender and is guilty of conversion of the airplane.

Because LeMaster retained the collateral without complying with K.S.A. 84-9-505, Emmons is entitled to elect either damages for conversion of the collateral or for the damages prescribed by K.S.A. 84-9-507(1). See 10 Anderson on the Uniform Commercial Code §§ 9-507:38 (citing *Chen v. Profit Sharing Plan of Dr. Donald H. Bohne*, 216 Ga. App. 878, 456 S.E.2d 237 [1995]); 9-507:58. On remand, the trial court is instructed to determine the amount of Emmons' damages under the remedy she elects.

Reversed and remanded with directions.