In re EMPIRE FOR HIM, INC., Debtor.

CAPITAL FACTORS, INC.,
Plaintiff–Appellant,

v.

EMPIRE FOR HIM, INC.,
Defendant–Appellee,

Hamilton Bank, N.A., Movant–Appellee.

No. 92–4440.

United States Court of Appeals,
Eleventh Circuit.

Sept. 14, 1993.

Michael W. Ullman, Richard A. Warren, Ullman & Ullman, P.A., North Miami Beach, FL, for plaintiff-appellant.

Gregg J. Breitbart, Kirkpatrick & Lockhart, Miami, FL, for Hamilton Bank.

Before KRAVITCH and COX, Circuit Judges, and HOBBS\*, Senior District Judge.

PER CURIAM:

Upon the filing of Debtor's petition for relief under Chapter 11 of the Bankruptcy Code, Capital Factors, Inc. held funds which it had collected on Debtor's accounts pursuant to a factoring agreement. Debtor asked the bankruptcy court to order the turnover of these funds pursuant to 11 U.S.C. § 542(a). Capital Factors opposed the turnover claiming a security interest in the funds and claiming damages for the Debtor's rejection of their factoring agreement. Although the bankruptcy court found that Capital Factors had a security interest in the funds as proceeds of the accounts and that Capital Factors had suffered damages in the amount of $70,000, the court refused to enforce the security interest for equitable reasons. The court ordered a turnover of the funds and allowed Capital Factors a general unsecured claim against the estate for its damages. On appeal, the district court affirmed, and Capital Factors now appeals to this court. The issue before us is whether the bankruptcy court properly exercised its general equitable powers. We hold that it did not and vacate its order.

---

\* Honorable Truman M. Hobbs, Senior U.S. District Judge for the Middle District of Alabama,

## I. FACTUAL AND PROCEDURAL BACKGROUND

Empire for Him, Inc. (Empire) and Capital Factors, Inc. entered into a factoring agreement, whereby Empire agreed to sell and assign its accounts to Capital Factors, and in return, Capital Factors agreed to service the accounts and return advances on those accounts to Empire. Under the agreement, Capital Factors received a certain percentage of each factored receivable as a commission. The minimum amount of the commission was $60,000 for each contract year payable in the amount of $5,000 per month. In other words, Capital Factors was to receive no less than $5,000 each month of the term of the contract.

Empire also granted Capital Factors a security interest in its accounts for any indebtedness it owed to Capital Factors. Specifically, the agreement provided

9. SECURITY: As collateral security for any and all of our (and our parent's subsidiaries' and affiliates') indebtedness and obligations to you (and to your parent, subsidiaries and affiliates), whether matured or unmatured, absolute or contingent, now existing or hereafter arising (including under indemnity or reimbursement agreements or by subrogation), and however acquired by you, whether arising directly between us or acquired by you by assignment, whether relating to this Agreement or independent hereof, including all obligations incurred by us to any other person factored or financed by you (collectively, the "Obligations"), we do hereby grant to you a security interest in all of our accounts, contract rights, and general intangibles (including all patents, trademarks, and copyrights registered in the United States Copyright or Patent offices, together with the goodwill of the business in connection with which such trademark may be used and the royalties and other fees which become due for the use of such patents, trademarks, or copyrights),

---

sitting by designation.

whether or not otherwise specifically assigned to you in this Agreement, now existing or hereafter acquired, and in the proceeds and products thereof, any security and guarantees therefor, in the goods and property represented thereby, in all of our books and records relating to the forgoing, and in all reserves, credit balances, sums of money at any time to our credit with you, and any of our property at any time in your possession. We hereby irrevocably authorize and direct you to charge at any time to our account any Obligations, and to pay any Obligations owing by us to your parent, subsidiaries or affiliates, by so charging our account. We agree to execute financing statements and any and all other instruments and documents that may now or hereafter be provided for by the Uniform Commercial Code or other law applicable thereto reflecting security interests granted to you hereunder. We hereby appoint you as our attorney-in-fact and authorize you to sign such financing statements on our behalf as debtor or to file such financing statements without our signature, signed only by you as secured party. We shall be liable for, and you may charge our account with, all reasonable costs and expenses of filing such financing statements (including any filing or recording taxes), making lien searches, and any attorney's fees and expenses that may be incurred by you in perfecting, protecting, preserving, or enforcing your security interests and rights hereunder.

The agreement further provided that in the event of termination of the contract, Capital Factors was to receive the monthly minimum factoring fee for ninety days.

On January 3, 1991, Empire filed a petition for relief under Chapter 11 of the Bankruptcy Code. It then moved under 11 U.S.C. § 365(d)(2) to reject the Factoring Agreement with Capital Factors, explaining that Capital Factors had not actively collected the accounts since Empire had filed for bankruptcy. The bankruptcy court granted the motion to reject the contract.

Empire then filed an adversary complaint against Capital Factors seeking a turnover of account proceeds collected and held by Capital Factors. Capital Factors answered the complaint and filed a motion for summary judgment, arguing that the funds were property of the estate and that, if the funds were property of the estate, the bankruptcy court could not order turnover without adequate protection for Capital Factors' secured interest in the funds as cash proceeds of the accounts. Capital Factors attached to its motion for summary judgment the financing statements filed with Florida's Secretary of State and an affidavit which stated that the disputed funds were generated by the accounts and that Empire had not paid the factoring commission since January 1991. Capital Factors also filed an amended proof of claim in the amount of $70,000.

Empire sought summary judgment ordering Capital Factors to turn over the funds. Empire argued that Capital Factors had only an unsecured claim against the estate because there were no outstanding factoring commissions owed on the date that the bankruptcy petition was filed.

In its order, the bankruptcy court accepted as fact the parties' stipulation (1) that the amount of Capital Factors' damages for breach of the Factoring Agreement was $70,000 and (2) that Capital Factors had "an unavoidable perfected security interest" in Empire's accounts. However, the bankruptcy court then stated that it would be inequitable to enforce this security interest, because Capital Factors had not collected the accounts since Empire's bankruptcy. The court denied Capital Factors' motion for summary judgment, granted Empire's motion for summary judgment and ordered Capital Factors to turn over $119,643.16, the amount of the proceeds in Capital Factors' possession. The bankruptcy court allowed Capital Factors a general unsecured claim in the amount of its contract damages.

Capital Factors appealed to the district court. In the meantime, Empire received post-petition financing from Hamilton Bank, N.A. (Hamilton). The district court allowed Hamilton to file a brief on Empire's behalf to defend Hamilton's interest in the funds as a post-petition secured creditor. The district court affirmed the bankruptcy court. It reasoned that the bankruptcy court had not

abused its discretion in finding enforcement of the security interest inequitable and allowing Capital Factors a general unsecured claim to the extent of its damages.

Capital Factors appeals to this court. Because of its post-petition financing agreement with Hamilton, Empire has disclaimed any interest in these appellate proceedings, and Hamilton now defends this appeal in Empire's stead to protect Hamilton's interest in the funds.

## II. CONTENTIONS OF THE PARTIES AND ISSUES ON APPEAL

Capital Factors argues that the summary judgment ordering it to turn over the funds to Empire was error. Capital Factors contends that the funds were not the property of the estate; that it was entitled to a setoff of damages for breach of the Factoring Agreement; and that it was improper for the district court to order turnover without first providing adequate protection for Capital Factors' security interest. Capital Factors maintains that the bankruptcy court erred when it exercised its equitable powers in a manner inconsistent with the provisions of the Bankruptcy Code.

Hamilton (in Empire's stead) counters that the bankruptcy court acted within its equitable power. It argues that the funds were property of the estate and that Capital Factors was entitled to neither a setoff nor adequate protection. Hamilton argues that Capital Factors was entitled only to an unsecured claim for damages for breach of the Factoring Agreement.

We hold that the funds were property of the estate, but that the bankruptcy court's equitable powers did not permit it to order a turnover of the funds without adequate protection for Capital Factors' security interest in those funds. We do not address any of the other issues raised by the parties.

## III. STANDARD OF REVIEW

The parties differ as to the standard of review to be applied in this case. Appellant Capital Factors urges us to apply a de novo standard, because a review of a summary judgment and a review of the bankruptcy court's equitable powers involve only issues of law. The appellee maintains that, because we review here the bankruptcy court's exercise of its equitable powers, we should apply a clearly erroneous standard or, at the very least, an abuse of discretion standard.

■ Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case. As a general rule, "[t]his Court's standard of review with regard to questions of law, whether made by the bankruptcy court or by the district court, is de novo." *Equitable Life Assurance Soc. v. Sublett (In re Sublett)*, 895 F.2d 1381, 1383 (11th Cir.1990). Because the district court (as an appellate court) makes no factual findings, our review of its decision is entirely de novo. *Id.* at 1384. We review the bankruptcy court's factual determinations for clear error. *Rush v. JLJ, Inc. (In re JLJ, Inc.)*, 988 F.2d 1112, 1116 (11th Cir.1993).

■ Here, we consider the scope of the bankruptcy court's equitable powers. We address only issues of law. Accordingly, we review de novo the conclusions of the bankruptcy court and the district court. *See Shapiro v. Saybrook Manuf. Co. (In re Saybrook Manuf. Co.)*, 963 F.2d 1490, 1492 (11th Cir. 1992).

## IV. DISCUSSION

■ We reject Capital Factors' argument that the funds in its possession were not property of the estate under 11 U.S.C. § 541(a)(1). Section 541(a)(1) defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993). This language plainly includes the funds held by Capital Factors, even though those funds were subject to Capital Factors' security interest. *Cf. United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (holding that property seized by a creditor prior to debtor's bankruptcy was property of the estate even though creditor—the IRS—held a secured interest—a tax lien—in the property).

Once we have concluded that the funds were property of the estate, we must then determine whether the bankruptcy court properly ordered the turnover of those funds pursuant to the provisions of 11 U.S.C. § 542 and the bankruptcy court's general equitable powers. This court has held that "[b]ankruptcy courts are indeed courts of equity, and they have the power to adjust claims to avoid injustice or unfairness." *Shapiro v. Saybrook Manuf. Co. (In re Saybrook Manuf. Co.)*, 963 F.2d 1490, 1495 (11th Cir.1992) (citations omitted). However, we have also held that this equitable power is not unlimited. *Id.* A bankruptcy court's equitable power "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

The Bankruptcy Code authorizes a bankruptcy court to order turnover of the debtor's property held by others. *See* 11 U.S.C.A. § 542(a) (West 1993). Section 542(a) provides that

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

*Id.* Section 363, to which § 542(a) refers, states that a trustee may only use, sell, or lease *cash collateral* if each entity with an interest in the cash collateral consents or, if after notice and a hearing, the court authorizes the use, sale, or lease of the cash collateral in accordance with the provisions of section 363. *Id.* § 363(c)(2). The provisions of section 363 further state that "the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id.* § 363(e). ▮ Section 542(a) authorizes the bankruptcy court to order the turnover of property of the estate, but only to the extent that the court provides adequate protection for those who have an interest in such property. As the Supreme Court explained in *United*

*States v. Whiting Pools, Inc.*, 462 U.S. 198, 207–07, 103 S.Ct. 2309, 2314–15, 76 L.Ed.2d 515 (1983),

> As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

Here, the bankruptcy court found that Capital Factors held an unavoidable perfected security interest in the funds in its possession. It also found that the amount of Capital Factors' damages for breach of the Factoring Agreement was $70,000. Given these explicit findings, the court could not then refuse to enforce Capital Factors' security interest, ignoring the protections afforded Capital Factors' interest by other provisions of the Code. The bankruptcy court's equitable powers simply do not extend that far.

## V. CONCLUSION

Accordingly, we VACATE the bankruptcy court's order granting Empire's motion for summary judgment, denying Capital Factors' motion for summary judgment and ordering Capital Factors to turn over the funds. We REMAND for proceedings not inconsistent with this opinion.