**In the Matter of Carol Ann TURNER, Debtor.**

**Carol Ann TURNER, Plaintiff,**

v.

**DeKALB BANK, Defendant.**

**Nos. 97–40191, 96–43302.**

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

June 3, 1997.

Ralph K. Strawn, Jr., Henslee, Robertson & Strawn, Gadsden, AL, for debtor/plaintiff.

Robert D. McWhorter, Jr., Inzer, Stivender, Haney & Johnson, P.A., Gadsden, AL, for defendant.

Linda Gore, Gadsden, AL, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

Defendant filed a motion for summary judgment on the ground that a repossessed vehicle is not property of the estate as a matter of law. Plaintiff seeks turnover of the vehicle, *inter alia.* All parties were present and represented by counsel at a scheduled hearing on April 2, 1997. The Court requested supplemental briefs. The

Court has jurisdiction over this core proceeding. 28 U.S.C. §§ 1334(b) and 157(b)(2)(E). Based on the findings of fact and conclusions of law stated herein the motion is denied.

## I. FACTS

The parties have stipulated the material facts relevant to this inquiry. In 1990, Thomas F. Turner borrowed funds from De-Kalb Bank using his 1979 Ford pickup truck as collateral. The bank was listed on the certificate of title as a lienholder. The note was renewed several times and still owing in July of 1995 when Thomas Turner and his wife, the plaintiff-debtor, divorced. The divorce court awarded ownership of the truck to Carol Turner and directed Thomas Turner to make the remainder of payments owed to DeKalb Bank.

Mr. Turner defaulted on this obligation and on May 15, 1996, filed a petition for relief under Chapter 7, case number 96–41364–JSS–7. He failed to reaffirm the indebtedness on the truck and on October 15, 1996, DeKalb Bank repossessed it from Carol Turner. From the time of the divorce until the creditor's repossession, the truck had been in the exclusive possession of Ms. Turner. On November 8, 1996, she filed a petition for relief under Chapter 13, case number 96–43302–JSS–13. Her unconfirmed plan treats the debt owed to DeKalb Bank as secured and proposes full payment plus eight percent interest. The debtor also claimed the truck as exempt property pursuant to Ala.Code § 6–10–6 (1975). The hearing on confirmation has been continued pending resolution of this motion.

Once the petition was filed, counsel for the debtor contacted DeKalb Bank demanding the return of the truck to Ms. Turner. The bank declined based upon its belief that complete ownership in the truck transferred to it upon default. The debtor filed an adversary complaint in this Court on February 27, 1997, seeking turnover of the property pursuant to 11 U.S.C. § 542, contempt, and an injunction against the creditor to prevent the sale of the repossessed truck. Further, the debtor re-quested damages for violation of the automatic stay.[1]

A motion for summary judgment was then filed by DeKalb Bank asserting that the vehicle was not property of the estate; and, therefore, not subject to turnover. Consequently, the creditor denied violation of the automatic stay and denied contempt. The issue of whether the truck is property of the estate under § 541(a), and whether the debtor's ownership interests in the truck terminated upon default was taken under submission on April 10, 1997. DeKalb Bank has agreed to retain possession of the truck until the rights and interests of the parties can be resolved by this Court.

## II. DISCUSSION

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the present case, there are no material facts in dispute; therefore, the issue before the Court is one of law.

### a. Turnover

The right of a debtor to compel turnover of property is contingent upon the interests the debtor has in the property. 11 U.S.C. § 542 states:

> Except as provided in subsection (c) or (d) of this section, an entity ... in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for such property or the value

---

1. 11 U.S.C. § 362(h) allows a debtor to seek damages for a willful violation of the stay. Debtor claims she is entitled to damages arising from borrowing or paying for alternative transportation.

of such property, unless such property is of inconsequential value or benefit to the estate.

■ In other words, if the property is such that the trustee may use, sell, or lease pursuant to § 363 or that the debtor may exempt pursuant to § 522, then the debtor may compel the creditor to release possession. A Chapter 13 debtor has the exclusive authority to exercise the rights and powers of a trustee under § 363(b). 11 U.S.C. § 1303. Thus, the Court must determine what property falls within the purview of these provisions. Section 363 grants the trustee with the authority to use, lease or sale "property of the estate." 11 U.S.C. § 363(b)(1). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Pursuant to 11 U.S.C. § 522, a debtor may exempt certain property from property of the estate. "The right to claim property exempt presupposes that the debtor must have a property interest in that property." *Gerold v. Compass Bank (In re Gerold)*, Ch. 13 Case No. 97–01188–TOM–13, Adv. No. 97–00076, slip op. at 4 (Bankr.N.D.Ala. April 18, 1997). Therefore, in order to compel turnover, the debtor must have a legal or equitable interest in the collateral for purposes of § 363 or have a property interest in it pursuant to § 522.

■ "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This statute is to be broadly construed to effectuate the intent of Congress that "a broad range of property be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983). *See United States v. Challenge Air International, Inc.*, 952 F.2d 384, 387 (11th Cir.1992) (*Whiting Pools* authorized turnover of the debtor's property held by a secured creditor to maximize the estate in order to facilitate reorganization). A property interest is defined to include "any type of right to specific property whether it is personal or real property, tangible or intangible." Black's Law Dictionary 1218 (6th

ed.1990). Given this broad generic definition, whether labeled property of the estate, legal interest, equitable interest, or property interest, the analysis is the same because each term is included under the definition of property rights. In most instances then, it makes no difference whether the debtor proceeds under § 363 or § 522. However, in some districts the right to pursue turnover pursuant to § 363 depends upon whether the proposed bankruptcy plan has been confirmed. 11 U.S.C. § 1327(b) states that "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Some bankruptcy courts within the Northern District of Alabama, for example, have opted to revest title in the debtor at confirmation. *See Gerold v. Compass Bank (In re Gerold)*, Ch. 13 Case No. 97–01188–TOM–13, Adv. No. 97–00076 (Bankr.N.D.Ala. April 18, 1997). The estate having no property remaining at confirmation, a suit compelling turnover pursuant to § 363 would fail. However, in this division, the order confirming plans provides that the estate holds title to the property until discharge or dismissal of the plan, so either prong remains a viable option to the debtor throughout his or her case. Nevertheless, the confirmation hearing in this case has been continued and the plan has not been confirmed.

### b. Defining Property Interest

■ The issue in the present case is whether Alabama law provides the debtor with any property rights in collateral that has been repossessed after default, and if so, whether those rights are sufficient so that the debtor may compel turnover of the property into the estate or may exempt it from property of the estate. State law determines the extent of any property interests a debtor may have, and federal law determines whether those rights are sufficient to constitute property of the estate or property exempt from the estate. *Southtrust Bank v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989).

DeKalb Bank relies upon *Charles R. Hall Motors, Inc. v. Lewis, et. al.*, Case No. CV–

94–B–1471–E (D.N.D.Ala.1997). In that adversary proceeding, this Court found that a creditor's refusal to return a repossessed vehicle to a debtor after notification of a bankruptcy filing constituted a willful violation of the stay. On appeal, the District Court reversed because the automobile was not property of the estate. *Id.* at 5. To reach this conclusion, the District Court found that Alabama common law transferred title and right of possession at the time of default to the creditor, leaving debtors with only a right to redeem the property. *Id.* at 6.

The District Court next addressed federal law and concluded that "(t)he right to redeem the property was not sufficient to propel the automobile into the property of the estate." *Id.* at 7 (*citing Southtrust Bank v. Thomas (In re Thomas),* 883 F.2d 991 (11th Cir.1989)). District Judge Blackburn distinguished the case before her from similar cases such as *Carr v. Security Savings & Loan Assoc.,* 130 B.R. 434 (D.N.J.1991), which held that property repossessed prepetition was part of the estate, by pointing out that the relevant state laws in those cases consider a creditor with possession of collateral as a "mere lienholder" versus Alabama which considers a secured creditor to hold legal title to collateral after default by the debtor. *Id.* "Alabama law severely limits the debtor's interest in the automobile, and the appellant's interest was ownership of the car, not a lien on the car. Because of this difference, *Carr* is not applicable to the case at bar." *Id.* at 8.

For the reasons discussed below, this Court respectfully disagrees with both findings in *Hall Motors v. Lewis.* First, Alabama law, which includes the Uniform Commercial Code in addition to common law, provides that only the right to possession passes to the creditor upon default by a debtor, not title. The debtor retains title in the repossessed property, together with several other rights, until it is sold to a bona fide purchaser. Further, the creditor's right of possession transferred to it by Alabama statute is returned to the debtor upon the filing of a bankruptcy petition. The Bankruptcy Code replaces the creditor's right to possession with other rights, such as adequate protection. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983), *citing* 11 U.S.C. § 363(e); *Capital Factors, Inc. v. Empire for Him, Inc. (In re Empire for Him, Inc.),* 1 F.3d 1156, 1160 (11th Cir.1993). Finally, the ownership interests retained by the debtor post-default are sufficient to bring the vehicle into property of the bankruptcy estate. Even if ownership was not retained by the debtor, the right to redeem the property, in and of itself, is sufficient to include the property in the estate. *Commercial Federal Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996). Accordingly, the creditor's argument that the 1979 truck is not property of the estate subject to a turnover action fails.

This issue deserves close scrutiny by the courts. A large majority of Chapter 13 cases filed in Alabama involve a vehicle, on which the payments are in default. Hundreds of turnover complaints in Chapter 13 cases are filed in Alabama each year. These figures do not include the majority of situations where the creditor voluntarily returned collateral to the debtor, upon demand, without the need to file a complaint. The importance of this issue probably applies in every other state as a result of rights determined by the Uniform Commercial Code and the Bankruptcy Code. This issue determines whether Chapter 13 relief is available to these very large numbers of debtors.

### c. Supreme Court Authority

Analysis begins with *Whiting Pools,* in which the United States Supreme Court addressed the question of whether a debtor has "legal or equitable interests" in property seized by a creditor prior to a bankruptcy petition. 462 U.S. at 204–05, 103 S.Ct. at 2313–14. The case established that the debtor maintained a sufficient interest in the property for it to be included in the estate, with the **possible** exception when the creditor could show that a statute clearly transferred all property rights to the creditor upon default. The ownership interests retained by the debtor plus the right of possession granted to him or her by the Bankruptcy Code were sufficient to bring that

property into the estate. The estate property includes rights and interests that the debtor may have lost, and the estate has broader property rights than the debtor's rights at the time the case was commenced. *Id.*

According to the facts of that case, the I.R.S. held a tax lien of approximately $92,000 against the debtor. *U.S. v. Whiting Pools, Inc.,* 462 U.S. at 200, 103 S.Ct. at 2311. To satisfy the lien, the I.R.S. seized the debtor's property. The debtor then filed for bankruptcy protection and sought to have the property returned. The issue before the Court was whether the bankruptcy court, pursuant to § 542, had the authority to subject the I.R.S. to a turnover order. *Id.* at 204, 103 S.Ct. at 2313. That determination depended upon whether the property belonged to the debtor despite repossession or became titled in the I.R.S. upon seizure. *Id.* The Court noted that although the Code contained "explicit limitations ... none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." *Id.* at 206, 103 S.Ct. at 2314. In fact, § 542 operated "to modif(y) the procedural rights available to creditors to protect and satisfy their liens." *Id.* The effect was to grant to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the time of the bankruptcy filing. *Id.* at 207, 103 S.Ct. at 2314–15 (footnotes and citations omitted). In exchange for these rights, the "Bankruptcy Code provides secured creditors various rights, including the rights to adequate protection, and these rights replace the protection afforded by possession." *Id.* The Court concluded that "(t)he I.R.S., under § 363(e), remains entitled to adequate protection for its interests. Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by·withholding the seized property from the debtor's efforts to reorganize." *Id.* at 212, 103 S.Ct. at 2317.[2]

However, the Supreme Court also pointed out that if levy or seizure statutes transfer ownership from a debtor to a creditor at the time of repossession, then the power to order turnover of the property pursuant to § 542 "may not apply." *Id.* at 209, 103 S.Ct. at 2316. Although federal provisions grant the I.R.S. with great powers to enforce liens, the Court stated that no provision within the Internal Revenue Code transferred ownership of the property from the debtor to the I.R.S. at the time of seizure. *Id.* at 210, 103 S.Ct. at 2316. The Court termed the relevant provisions as "procedural devices available to the I.R.S. to protect and satisfy its liens," and "do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody." *Id.* at 210–11, 103 S.Ct. at 2316. The analysis does not change when dealing with a private creditor, rather than a public agency. The Court stated that the procedural remedies of the Internal Revenue Code are "analogous" to the provisions of the Uniform Commercial Code. *Id.* The Court points to the Uniform Commercial Code § 9–503 as an example of a procedural device which provides creditors the right to legal custody of the property. *Id.* at 207 n. 14, 103 S.Ct. at 2314 n. 14. This particular U.C.C. provision is highly relevant to the issue presently before the Court and will be discussed in greater detail later in this opinion. Given that only the right to repossess the collateral was provided by the Internal Revenue Code, "ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." *Id. citing Bennett v. Hunter,* 9 Wall. 326, 336, 19 L.Ed. 672 (1869); 26 U.S.C. § 6339(a)(2). Until that sale, title remains with the debtor.

■■ This Court agrees with the holding in *SPS Technologies, Inc. v. Baker Material Handling Corporation,* 153 B.R. 148, 151 (Bankr.E.D.Pa.1993), that *Whiting Pools* "creates a presumption that all property levied upon pre-petition is included in the debtor's estate, and unless the creditor can show

**2.** The Eleventh Circuit has recognized the expanded interest of the estate to include a right of possession. *See United States v. Challenge Air International, Inc.,* 952 F.2d 384, 386 (11th Cir. 1992); *Capital Factors, Inc. v. Empire for Him, Inc. (In re Empire for Him, Inc.),* 1 F.3d 1156, 1160 (11th Cir.1993).

that the levy completely transferred ownership of the property to the creditor, leaving the debtor with no remaining interest, the property must be returned to the estate." *See also In re Young,* 193 B.R. 620, 621 (Bankr.D.C.1996)(holding that *Whiting Pools* stood for the proposition that "the mere seizure of the vehicle did not suffice to destroy the debtor's title as long as the debtor had a right to redeem."); *Capital Factors, Inc. v. Empire for Him, Inc. (In re Empire for Him, Inc.),* 1 F.3d 1156 (11th Cir.1993)(*Whiting Pools* requires that accounts receivable seized prepetition be turned over to estate); *United States v. Challenge Air International, Inc.,* 952 F.2d 384 (11th Cir.1992)(*Whiting Pools* requires turnover of the debtor's property held by a secured creditor to maximize the estate in order to facilitate reorganization). Thus, the burden in this case falls upon the creditor to show that ownership of the truck was transferred to it by law upon default.

### d. State law

The rights of a debtor in property are defined by state law. *Commercial Federal Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555, 1557 (11th Cir.1996). This case presents two questions concerning ownership under Alabama law. First, although the certificate of title remained in the name of the debtor's ex-spouse, the divorce decree provided that the truck become the property of the debtor. Did the state court grant to Ms. Turner a recognizable ownership interest? Second, if the ownership of the truck was transferred by the divorce decree to the debtor, did it remain with her or transfer to the creditor upon default?

■ The Uniform Certificate of Title and Antitheft Act of Alabama, § 32–8–39(d), provides that "(a) certificate of title issued by the department is prima facie evidence of the facts appearing on it." The official comments for this provision state that other evidence may be used to rebut the certificate. The Alabama Supreme Court has also recognized that ownership may be established by evidence outside of the certificate of title, such as a party's taking possession of the vehicle, evidence of a bill of sale that manifests intent to sell and grant dominion and control, source of payment, and purchase of insurance coverage. *Crowley v. State Farm,* 591 So.2d 53, 55 (Ala.1991).

In the present case, the divorce decree dated July 25, 1995 states that Thomas Turner "hereby transfers and assigns to (Carol Turner) as her separate property, all of his interest in the 1979 Ford truck." First, in the stipulated facts submitted by the parties, Carol Turner remained in possession of the truck until it was repossessed on October 15, 1996. Second, although not a bill of sale, the divorce decree is evidence of the court's intent to transfer the vehicle and grant dominion and control over it to the debtor. Further, the debtor provided in her plan for full payment of the truck to the creditor and listed it as an exemption. These facts provide sufficient evidence for this Court to conclude that in accordance with Alabama law, ownership was effectively transferred to the present debtor.

■ However, whether Alabama law transfers ownership to the creditor upon default by the debtor is a more complicated question. Prior to the adoption of the U.C.C. by the State of Alabama as Title 7, the law was clear. "Upon a debtor's default, title and right of possession pass to creditor." *Rhodes–Carroll Furniture Co. v. Webb,* 230 Ala. 251, 160 So. 247 (1935). If both title and right to possess property pass to the creditor, there may be no remaining legal or equitable interests which subject the property to a turnover proceeding in bankruptcy. However, the U.C.C. addresses only the right of a secured party to repossess the collateral. Alabama Code § 7–9–503 (1975) states "(u)nless otherwise agreed, a secured party has on default the right to take possession of the collateral." The absence of language addressing title to the vehicle raises a statutory construction issue in which the creditor argues that the common law remains unchanged. "A statute in modification of the common law will not be presumed to alter it further than is expressly declared." *Pappas v. City. of Eufaula,* 282 Ala. 242, 244, 210 So.2d 802 (1968). If this argument prevails, then the common law rule that title in the

1979 Ford truck transferred at the time of default remains intact.

On the other hand, the U.C.C. states that particular provisions displace common law. Ala.Code § 7–1–103 (1975). According to the official comments accompanying that statute, unless "explicitly replaced" by the U.C.C., however, its provisions will merely supplement the common law. The debtor argues that although there is no one provision that expressly overrules the common law, when read together, several U.C.C. provisions do replace it. According to the debtor, Title 32, or the Uniform Certificate of Title and Antitheft Act, and Title 7, the Secured Transactions portion of the Code, define "owner" to expressly exclude "lienholder." Second, portions of Article 9 in Title 7, which address default and rights and duties of the parties thereafter, displace the common law rule because they retain title in the name of a debtor until the vehicle is sold to a bona fide purchaser.

Title 32 of the Alabama Code does define an owner as "a person, ... other than the lienholder, having the property in or title to a vehicle." Ala.Code § 32–8–2(13) (1975). However, this particular title deals with the *voluntary* transfer of title from one entity to another. *See* Ala.Code § 32–8–44 (1975). Article 9 of the U.C.C., in Title 7, addresses security interests and the *involuntary* transfer of title, and it defines the parties not in terms of "owner" and "lienholder" but as "debtor" and "secured party." *See* Ala.Code § 7–9–105 (1975). Further, the definition for "secured party" does not exclude that party from ownership. Finally, the preamble to Title 32 states that "(f)or the purpose of this chapter, the following terms have the following meaning." That those definitions were to be confined to usage within Title 32 is evidenced by case law. In *Larry Savage Chevrolet, Inc. v. Richards,* 470 So.2d 1168 (Ala. 1985), the issue was whether a car dealer misrepresented the truth when he sold a vehicle as "new" when it had in fact suffered damage while on the display lot. The seller relied upon the definition of new vehicle found in Title 32, which provided that a new vehicle was "one not subject of a first sale for use." *Id.* at 1170. The Alabama Supreme Court rejected that as a defense in a tort action stating, "the definition of 'new vehicle' in § 32–8–2(10) is only for the purposes of the Alabama Uniform Certificate of Title and Antitheft Act." *Id.*

The more plausible argument by debtor is that several provisions within Title 7 displace the common law rule. By analyzing these provisions chronologically, from the time of a debtor's default until the vehicle is sold to a bona fide purchaser, it becomes clear that displacement of the common law occurred. As previously discussed, Ala.Code § 7–9–507(1975) grants to a secured party the right to take possession after default. The purpose of this statute is not to grant title to the creditor, but to allow creditors to repossess without a judicial process, commonly referred to as self-help. *See General Finance Corp. v. Smith,* 505 So.2d 1045, 1047–48 (Ala. 1987). While in the secured party's possession there are certain duties imposed upon the creditor by the Uniform Commercial Code. Section 7–9–207(1) states that the creditor must use "reasonable care in the custody and preservation of collateral in his possession." Further, that section provides the creditor is "liable for any loss caused by his failure to meet any obligation." If title had already passed to this party upon default, the Code would have no reason to provide the debtor with a cause of action for failure to use reasonable care after repossession. At this point in the relationship, it appears the U.C.C. considers the secured party to be merely a custodian of the property. Additionally, that same statute provides that the liability of the secured party does not cause him to lose his "security interest." Note finally that despite the fact default and repossession have already occurred, the provision continues to refer to the creditor's interest as that of a lien instead of ownership.

The secured party is permitted to sell the vehicle after default, but must dispose of it in accordance with Ala.Code § 7–9–504(3)(1975). This means that "reasonable notification of the time and place of any ... sale" must be sent to the debtor. Should the sale fail to adhere to this provision, the debtor has a cause of action in conversion. *Ab-*

*ston v. Central Bank of the South*, 492 So.2d 1298, 1300 (Ala.1986); *Davis v. Huntsville Production Credit Ass'n*, 481 So.2d 1103 (Ala.1985)(failure to satisfy notification requirements regarding sale or disposition of security for nonpayment of debt constitutes 'conversion' as a matter of law); *Simmons Mach. Co. v. M & M Brokerage, Inc.*, 409 So.2d 743 (Ala.1981); *Wells v. Central Bank of Alabama, N.A.*, 347 So.2d 114 (Ala.Civ. App.1977) (if sale is not made in commercially reasonable manner, the secured party could be held liable to debtor who was not permitted to reclaim his automobile).

The common law of Alabama defines conversion as the "exercise of dominion over personal property of another to exclusion or in defiance of an *owner's* rights." *Davis v. Huntsville Production Credit Assoc.*, 481 So.2d 1103, 1107 (Ala.1985)(emphasis added). In order for conversion to take place, "plaintiff must have general or special title to property and possession or the immediate right to possession." *Jones v. Americar, Inc.*, 283 Ala. 638, 219 So.2d 893 (1969). If, as the creditor contends, title and right to possession both transferred upon default, present law would not recognize conversion as the proper cause of action for the debtor, as was the rule before the adoption of the Uniform Commercial Code. Conversion is also recognized as the proper avenue for debtors pursuing a wrongful repossession suit. *Big Three Motors, Inc. v. Rutherford*, 432 So.2d 483 (Ala.1983)(if repossession was conducted in an oppressive and insulting manner, the debtor prevails on the theory of conversion); *Ford Motor Credit Co. v. Byrd*, 351 So.2d 557, 560 (Ala.1977)(if possession was obtained through fraud, artifice, stealth or trickery a case in conversion exists for owner).

The debtor also has a right to redeem the collateral at any time before the secured party has disposed of or entered into a contract for its disposition. Ala.Code § 7–9–506 (1975). She is entitled to any surplus received on the sale. Ala.Code § 7–9–504 (1975). Finally, § 7–9–504 provides for the transfer of ownership from the debtor to the bona fide purchaser, NOT from the creditor to the bona fide purchaser. "When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto." If ownership transferred at the time of default, this statute would not provide for the transfer of the debtor's rights, but those of the creditor. Further, if the right to redeem was the only remaining right belonging to the debtor, the term "rights" would be in the singular tense. Finally, that same section provides the creditor with the right to purchase the property at a public sale under certain circumstances. No circumstances come to mind under which an owner would need the statutory authority to bid on its own property.

DeKalb Bank cites two cases decided after the adoption of the U.C.C. for the proposition that the common law transferring ownership to the creditor upon default remains intact, *Pierce v. Ford Motor Credit Co.*, 373 So.2d 1113 (Ala.Civ.App.1979), and *American Nat. Bank & Trust Co. of Mobile v. Robertson*, 384 So.2d 1122 (Ala.Civ.App.1980). Both cases affirmatively state the common law rule and cite as authority, but without discussion, both Ala.Code § 7–9–503 and an Alabama Supreme Court case *Rainey v. Ford Motor Credit Co.*, 294 Ala. 139, 313 So.2d 179 (1979). However, as previously discussed, § 7–9–503 grants only the right to repossess the property and does not purport to transfer ownership to the creditor. Therefore, authority for this holding could only be found in case law.

The *Rainey* case involved a debtor pursuing a conversion action against a creditor who had repossessed the debtor's truck. *Id.* at 140–41, 313 So.2d 179. The debtor had observed the creditor using the vehicle for personal errands and saw that the truck had suffered damage as a result. The issue was whether the creditor's use of the vehicle amounted to conversion. *Id.* at 143, 313 So.2d 179. The Court concluded it did not and stated:

> In *Rhodes–Carroll Furniture v. Webb*, 230 Ala. 251, 160 So. 247 (**pre-U.C.C.**), this court said as to some counts in trover: 'But as defendant had the legal title and

the lawful right to the possession, manifestly there could be no recovery for a conversion, * * *.' This statement is quoted with approval in *First National Bank of Butler v. Sturdivant*, 288 Ala. 133, 258 So.2d 715 (1972). This is also the theory of the Alabama cases that the defendant would have the **right to use** the truck after default and repossession.

*Id.* at 143–44, 313 So.2d 179 (emphasis added). By reading the entire text of the holding, it appears that the Alabama Supreme Court cites *Webb* merely to illustrate that ample authority existed for a creditor to *use* debtor's property after repossession. Additionally, as pointed out in a recent decision by Chief Judge Mitchell of the Northern District of Alabama, by stating that *Webb* was decided prior to the U.C.C., the state supreme court was acknowledging that, "the application of some portion of the holding quoted may have been effected by the change in law." *Gerold v. Compass Bank (In re Gerold)*, Ch. 13 Case No. 97–0118–TOM–13, Adv. No. 97–00076, slip op. at 4 (Bankr.N.D. Ala. April 18, 1997). The right to possession, not the transfer of title, was the only portion of the holding from *Webb* relevant to the issue in *Rainey*. Finally, analysis of changes in the law brought upon by the U.C.C. were not necessary for the issue before the court, and, as Chief Judge Mitchell concluded, "the *Rainey* Court did not adopt the position that title to a vehicle passes to the creditor upon default in a post-U.C.C. setting." [3] The authority on which DeKalb Bank relies is dicta.

Chief Judge Mitchell points out that the *Sturdivant* case, also mentioned in *Rainey*, did not hold that title passed to the creditor post-U.C.C., but instead found that the parties' chattel mortgage agreement conveyed title upon default. This analysis tracks that of the Eleventh Circuit in *Southtrust Bank v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989), discussed later in this opinion, wherein a sales contract retaining title to collateral in the creditor dictates ownership.

Courts across the nation have interpreted their states' versions of Ala.Code § 7–9–503, containing the identical language, to supplant, rather than supplement the common law rule. Citing an Alabama case, the Supreme Court of Wyoming held that "(u)nder the U.C.C., default does not divest a debtor of all right and interest in the secured property, nor is the secured party, the creditor, vested with the unlimited power to deal with the property as it wishes." *Comer v. Green Tree Acceptance, Inc.*, 858 P.2d 560, 563 (Wyo.1993); *citing Wells v. Central Bank of Alabama, N.A.*, 347 So.2d 114 (Ala.Civ.App. 1977). In Illinois, the common law rule that "legal title to property subject to a security interest passes to the creditor after he has taken possession following default" was abrogated by the Uniform Commercial Code. *Kouba v. East Joliet Bank*, 135 Ill.App.3d 264, 268, 89 Ill.Dec. 774, 778, 481 N.E.2d 325, 329 (1985)(holding that the common law creditor's claim to absolute title was replaced by U.C.C. which granted debtor with rights and property interests after repossession).

As a final point on this matter, we return to the Supreme Court's decision of *Whiting Pools*. As already noted, the key to determining ownership of pre-petition post-default collateral is whether applicable law transfers ownership to the creditor. Provisional remedies, as the Court explained, do no more than bring the property into the creditor's legal custody. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 211, 103 S.Ct. 2309. 2316, 76 L.Ed.2d 515 (1983). In fact, the very provision at issue here, U.C.C. § 9–503, is cited twice by the Supreme Court as an example of such a measure. "One of the procedural rights the law of secured transactions grants a secured creditor to enforce its lien is the right to take possession of the secured property upon the debtor's default." *U.S. v. Whiting Pools, Inc.* 462 U.S. at 207 n. 14. Again, the provision is referenced when discussing the "special procedural devices" available to private secured creditors to protect and satisfy their liens. *Id.* at 211, 103 S.Ct. at 2316. In light of all the foregoing,

**3.** In fact, Judge Mitchell found that the language in both *Robertson* and *Pierce*, also cited by the creditor in the case before her, to be "dicta" and contradictory to more recent rulings. *Id.* at 6.

Because of this, she held that the U.C.C. did alter the common law and that legal title to collateral did not pass until disposition of the property under § 7–9–504.

this Court is satisfied that the Uniform Commercial Code as adopted by the State of Alabama replaced the common law by providing the creditor with a right to possession only, and that ownership could only be fully transferred at the proper sale of the property to a bona fide purchaser. This holding is consistent with courts across the country and furthers one of the main goals of the U.C.C., "to make uniform the law among the various jurisdictions." Ala.Code § 7–1–102(2)(c) (1975).

One final argument made by the creditor in this area needs to be addressed before the federal issue may be considered. DeKalb Bank argues that the U.C.C. explicitly provides that its statutory remedies are in addition to those provided under common law, and cites Ala.Code § 7–9–501 (1975) as authority for this position. That provision states:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and ... those provided in the security agreement ... The rights and remedies referred to in this subsection are cumulative.

The Official Comment which follows this provision states that its purpose is to provide remedies in addition to those provided by the security agreement. There is no mention of the common law. In fact, if the Alabama legislature had so intended, the statute would state that the rights and remedies in that section are in addition to those provided by the common law instead of stating that the rights and remedies "referred to in this subsection" are cumulative.

Having reached the conclusion that the debtor maintains property rights in the collateral, after default, pursuant to Alabama law, the issue of whether these rights are sufficient to bring the property into the bankruptcy estate or provide the debtor with the right to exempt it from the estate must be addressed.

**e. Federal law**

■ The second part of *Charles R. Hall Motors, Inc. v. Lewis, supra,* upon which DeKalb Bank relies, is that a right of re-

demption is insufficient to propel the property into the bankruptcy estate, *citing Southtrust Bank v. Thomas (In re Thomas),* 883 F.2d 991 (11th Cir.1989). Although this Court has concluded that a debtor whose property has been repossessed pre-petition has more than just redemption rights in that property, the issue needs clarification nonetheless.

Property of the estate is created by 11 U.S.C. § 541(a), which states in part:

> The commencement of a cause under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case.

So that a debtor may have the best opportunity to reorganize and ensure equal distribution of limited assets according to the priorities set forth in the Code, the bankruptcy estate must be all inclusive. "Congress' intent to define property of the estate in the broadest possible sense is evident from the language of the statute ... It would be hard to imagine language that would be more encompassing." *Collier on Bankruptcy* ¶ 541.01, p. 541–7 (15th ed.1996). The United States Supreme Court adopted this policy. *U.S. v. Whiting Pools,* 462 U.S. 198, 203, 204–05, 103 S.Ct. at 2312–13, 2313–14, 76 L.Ed.2d 515 (1983).

Despite this mandate there exists some confusion, at least within this Circuit, of what constitutes property of the estate. Two decisions rendered by the Eleventh Circuit appear to take divergent views. The first decision utilizes the broad interpretation. *Jim Walter Homes, Inc. v. Saylors (In re Saylors),* 869 F.2d 1434 (11th Cir.1989). The second decision, although issued in the same year as *Saylors,* takes a more narrow view. *Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991 (11th Cir.1989).

In *Saylors,* the debtor filed a petition under Chapter 7 listing Jim Walter Homes as the first mortgage holder. *In re Saylors,* 869 F.2d at 1435. After the debtor received a discharge, the mortgage creditor filed a motion for relief from the stay, which was

granted. *Id.* The debtors then filed a petition under Chapter 13 listing the mortgage arrearage as the only debt. The plan was confirmed over Jim Walter's objection. It provided for payment of $83 monthly to the creditor on the arrearage in addition to contractual monthly mortgage payments. *Id.* The issue before the Eleventh Circuit was whether the bankruptcy court had jurisdiction over a home in which the only remaining interest the debtor held at the time of filing was the equitable right of redemption. *Id.* at 1436–37. The Court turned to 28 U.S.C. § 157(a)-(b)(1) which provides the bankruptcy court with jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of (the) case, and of property of the estate," and found that either the statutory or equitable right of redemption is a property right "sufficient to give the bankruptcy court jurisdiction over a debtor's home." *Id.* at 1437.

The *Thomas* case caused the confusion. It appeared a few months after *Saylors* and failed to even mention the prior case, even though both dealt with property of the estate issues. In *Thomas,* a debtor filed Chapter 13 and scheduled Southtrust Bank of Alabama, N.A. as a creditor on his mobile home. *Southtrust Bank v. Thomas (In re Thomas),* 883 F.2d 991, 992 (11th Cir.1989). Southtrust held a purchase money security interest in the mobile home pursuant to a contract which also provided that the creditor would retain title to the mobile home until paid in full. *Id.* Southtrust did not file a proof of claim and the standing trustee and debtor failed to file a proof of claim, consequently, no provision was made in the plan for payment of that debt. *Id.* at 993. After confirmation, the creditor sought relief from the automatic stay in order to foreclose on the mobile home. The debtors objected and a hearing was held. *Id.* While the matter was under submission, the automatic stay lifted automatically by virtue of 11 U.S.C. § 362(e).[4] Southtrust then sued in state court for possession of the mobile home. In response, the debtors filed a complaint seeking an injunction and damages. The Bank-

ruptcy Court ruled that Southtrust was bound by the terms of the debtors' confirmed plan not to proceed against them or their property and that the debtors were entitled to the relief they sought. *Id.* at 994. The district court reversed the bankruptcy court and it was affirmed on appeal.

The issue before the Eleventh Circuit was whether the mobile home was property of the estate. After citing the oft quoted need for broad interpretation and *Whiting Pools,* the Court stated that another principle of bankruptcy law was equally applicable. *Id.* at 995. "(W)hatever rights a debtor has in property when his bankruptcy petition is filed continue in bankruptcy—no more, no less." *Id. citing In re Lally,* 51 B.R. 204, 205 (N.D.Iowa 1985)(*quoting* H.R.REP. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S. CODE CONG. & AD.NEWS 5787). The Court then turned to the parties' contract to find that its terms explicitly provided that legal title to the mobile home remained with the creditor and the debtor had only the right of possession. *Id.* at 995–96. "This Court finds that Southtrust has legal title to the mobile home based upon the sales contract signed by the debtors and the mobile home could not, therefore, have been part of the debtor's estate. The only interest of the debtors is the right to *possession.*" *Id.* (emphasis added). The right to *redeem* the property was never addressed by the Court. These rulings appear to say that the equitable right to redeem is sufficient to bring property into the estate per *Saylors,* but the equitable right to possess pursuant to *Thomas* is not.

Since *Saylors* and *Thomas,* the Eleventh Circuit returned to this issue in 1996 and once again applied the broad definition of property of the estate. *Commercial Federal Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996). Within that opinion lies a possible reconciliation between the previous two decisions. In *Smith,* the debtor had defaulted under the terms of the mortgage held by Commercial Federal Mortgage Corporation. *Id.* at 1557. After the foreclo-

---

**4.** 11 U.S.C. § 362(e) provides that the automatic stay is terminated automatically thirty days after a request for relief from the stay.

sure sale, the debtor preserved his statutory right of redemption by vacating the premises. He then filed Chapter 13 and attempted to reinstate the mortgage debt through his bankruptcy plan. In addressing the issue of whether § 1322(b) of the Bankruptcy Code would allow for such modification, the Eleventh Circuit was again faced with a property of the estate issue. "Although section 6–5–250 of the Alabama Code characterizes the statutory right of redemption as a mere personal privilege and not property or a property right, it is still a right that becomes property of the bankruptcy estate under the broad definition provided in Bankruptcy Code section 541." *Id.* at 1558 *citing Wragg v. Federal Land Bank,* 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300 (1943). Thus, the Court expanded its holding in *Saylors* by declaring that whether statutory or equitable, the right to redeem was sufficient to bring property within the estate. *Id.* What remains unexplained, however, is what happened to the debtors' right to redeem in *Thomas.*[5] Yet, for the purposes of this opinion, how the debtors in *Thomas* lost that right is irrelevant, for this debtor clearly retains the right to redeem, and under the precedent set by both *Saylors* and *Smith,* that is sufficient to propel the property into the estate and the protections of the automatic stay.[6]

We return to *Hall Motors v. Lewis,* the basis for the creditor's argument in the present case, because it relied upon *Thomas* to find that the debtor had an insufficient interest in the vehicle after default to be property of the estate. That opinion misinterpreted *Thomas.* First, *Thomas* clearly rested on the terms of a contract retaining title to the mobile home in the creditor, and not the

common or statutory law of Alabama defining title upon default. No such contractual provision was found in *Lewis.* Second, *Lewis* ignored *Saylors* and *Smith* which held that the right of redemption is property of the estate and instead found that *Thomas* stood for the opposite proposition. Notwithstanding the limiting language in *Thomas* that an estate has "no more, no less" rights than a debtor, the Eleventh Circuit recognizes that § 542 gives the estate a right of possession that a debtor has lost. *United States v. Challenge Air International, Inc.,* 952 F.2d 384, 386 (11th Cir.1992); *Capital Factors, Inc. v. Empire for Him, Inc. (In re Empire for Him, Inc.),* 1 F.3d 1156, 1160 (11th Cir. 1993).

Other bankruptcy courts in Alabama have followed the precedent set by *Saylors* and *Smith.* "There is no question in this Circuit now that the statutory right of redemption under Alabama law is property of the estate in a bankruptcy proceeding." *In re Bozeman,* 174 B.R. 328, 329 (Bankr.M.D.Ala.1993) *citing Wragg v. Federal Land Bank of New Orleans,* 317 U.S. 325, 329, 63 S.Ct. 273, 275, 87 L.Ed. 300 (1943); *Gerold v. Compass Bank (In re Gerold),* Ch. 13 Case No. 97–01188–TOM–13, Adv. No. 97–00076 (Bankr. N.D. Ala. April 18, 1997); *See In re Sims,* 185 B.R. 853 (Bankr.N.D.Ala.1995). Based upon *Whiting Pools,* bankruptcy courts across the nation have also found that a right to redeem is sufficient. *See Chrysler Credit Corp. v. Caldwell (In re Caldwell),* 81 B.R. 164 (Bankr.M.D.Ga.1988); *Agricredit Corp. v. Harrison (In re Harrison),* 987 F.2d 677, 681 (10th Cir.1993); *In re Young,* 193 B.R. 620, 621 (Bankr.D.C.1996); *Leverette v. NCNB South Carolina (In re Leverette),* 118

---

**5.** Here are some possible explanations. The Court could have failed to consider equitable rights at all; or it could be that it erroneously considered the mobile home under real property law, rather than the U.C.C., and as such, perhaps the debtors retained no right to redeem by their failure to move out of the mobile home prior to foreclosure; or perhaps the 11th Circuit felt that the contract provision retaining title in the creditor's name meant that the debtors never became entitled to a right of redemption in the first place. This logic appears faulty because concerning real property, Alabama is a title theory, not a lien theory, state. *In re Thomas,* 883 F.2d at 995. Therefore, title by law is always retained

by creditor, yet the debtor retains the right to redeem the real property.

**6.** Note that the property at issue in *Saylors* and *Smith* were homes, governed by the law of real property. The property at stake in *Thomas, Lewis,* and the present case is personal property covered by the Uniform Commercial Code. Although Alabama is a title theory state in real property, it is neither under the U.C.C.. The Official Comment to Ala.Code § 7–9–101, adopted by Alabama states, "(t)his article ... adopts ... neither a 'title theory' or a 'lien theory' of security interests."

B.R. 407 (Bankr.D.S.C.1990); *Jackson v. GMAC (In re Jackson)*, 142 B.R. 172 (Bankr. N.D.Ohio 1992); *In re Pluta*, 200 B.R. 740, 742 (Bankr.D.Mass.1996). The right to any surplus from the sales proceeds is also considered to be a sufficient "legal or equitable interest" which brings property into the estate. *SPS Technologies, Inc. v. Baker Material Handling Corp.*, 153 B.R. 148, 152 (Bankr.E.D.Pa.1993).

The right to redeem being sufficient to propel property into the debtor's estate, it is certainly clear that the debtor may recover the vehicle when, as in the present case, she retains many additional rights in repossessed property, including that of ownership (Ala. Code § 7–9–504), notice of sale (Ala.Code § 7–9–504), proper conduct of the sale (Ala. Code § 7–9–505), and the surplus from sale proceeds (Ala.Code § 7–9–504). The 1979 pickup truck being property of the estate or property capable of being exempted from the estate, the debtor has the right, and the bankruptcy court the authority, to compel the creditor to turnover the collateral to the estate.[7] Therefore, defendant's motion for summary judgment is denied, and the adversary proceeding will proceed to trial as scheduled.[8] A separate order consistent with this opinion will be entered.

---

**7.** It is widely recognized that the Code implies an affirmative duty to voluntarily return property repossessed pre-petition without forcing the debtor to file a turnover action at all. *See California Employment Dev. Dept. v. Taxel*, 98 F.3d 1147 (9th Cir.1996)(duty to deliver is mandatory and arises upon filing of bankruptcy petition); *Knaus v. Concordia Lumber Co., Inc.*, 889 F.2d 773 (8th Cir.1989); *In re Belcher*, 189 B.R. 16 (Bankr.S.D.Fla.1995); *Brooks v. World Omni (In re Brooks)*, 207 B.R. 738 (Bankr.N.D.Fla.1997).

**8.** If the plaintiff succeeds in recovering the vehicle, the debtor will have the right to cure the default in the plan. 11 U.S.C. § 1322. "In fact, the 'cure' remedies available when a statutory right of redemption of personal property is in question are less restricted than where the property securing the debt is the principal residence." *Compare* 11 U.S.C. § 1322(b)(2) *with* § 1322(b)(5); *See Commercial Federal Mortgage Corporation v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996). *Gerold v. Compass Bank (In re Gerold)*, Ch. 13 Case No. 97–01188–TOM–13, slip op. at 9 (Bankr.N.D. Ala. April 18, 1997).